# United States District Court For

# The Eastern District of Missouri

# Eastern Division

PAUL HENREID

        Plaintiff,

    v.

KODNER WATKINS LC;

ALBERT WATKINS;

MICHAEL SCHWADE;

And DOES 1-10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

Plaintiff Requests Trial by Jury

**CIVIL COMPLAINT**:

1) LEGAL MALPRACTICE
2) BREACH OF FIDUCIARY DUTY / CONSTRUCTIVE FRAUD 3)
3) NEGLIGENCE
4) FRAUD
5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1

## I.   JURISDICTION

2

### Diversity of Citizenship

3      Plaintiff is a citizen of the State of Oklahoma.  Defendant Kodner Watkins LC is a

4  law firm incorporated under the laws of the State of Missouri, and has its principal place

5  of business in Saint Louis, Missouri.  Defendants Albert Watkins and Michael Schwade

6  are individuals that are citizens of the State of Missouri that work for defendant Kodner

7  Watkins LC with their principal place of business in Saint Louis, Missouri.  Contact

8  information for the named defendants and plaintiff are in the attachment.  Upon

9  information and belief, each of the fictitiously named DOE Defendants is responsible in

10  some manner for the occurrences herein alleged and proximately caused plaintiff's

11  damages, and each was acting as agent for the others.

12      Plaintiff is ignorant of the true names or capacities of the defendants sued herein

13  under the fictitious names DOES 1-10, and will seek leave of court to amend this

14  complaint to allege such names and capacities as soon as they are ascertained.

15

### Amount in Controversy

16      The amount in controversy exceeds $75,000, not counting interest and costs of court,

17  for reasons described below.  Plaintiff has suffered actual damages and continues to suffer

18  damages and will suffer lifelong irreversible damage as a direct result of Defendants'

19  actions.

20

21

22

## II.    <u>STATEMENT OF FACTS</u>

On January 10, 2018, Plaintiff retained Defendants to secure an Expungement under Missouri Revised Statute section 610.140 and e-mailed Defendants: "I signed and attached the letter agreement regarding expungement.  I will mail a retainer check."

Upon request from Defendants for a $2,500 retainer for legal services Defendants estimated would cost around $5,000.  Plaintiff paid Defendants $5,000 up front so money would not be an issue in properly filing, serving, executing, and completing the two-page court-approved Form Petition for Expungement.

In 2018, Plaintiff retained Defendants for an Expungement, not Clemency, and specifically instructed Defendants in writing "to fly below their radar."

Plaintiff could not even seek Clemency because Clemency requires exhausting other state remedies, such as Expungement, and once a conviction is expunged there is no standing for Clemency:  "The Governor may grant reprieves, commutations and pardons, <u>after conviction</u>." (Missouri Department of Corrections web site (underline added).)  In addition, Plaintiff was time-barred from seeking Clemency.  Therefore, Clemency was a legal and factual impossibility.

Even if Clemency had been available, it is inferior to Expungement.  Clemency is a proverbial "long shot" that does not remove a conviction.  "A full pardon does not remove the conviction from the individual's criminal record." (Missouri Department of Corrections web site) By contrast, there is a statutory "presumption that the expungement is warranted [and] the effect of such order shall be to restore such person to the status he or

1   she occupied prior to such arrests, pleas, trials, or convictions as if such events had never

2   taken place." (Mo. Rev. Stat. § 610.140.)

3       The Missouri Department of Corrections web site states: "Q: Will a pardon expunge

4   my record?  No. The criminal history record maintained by the Missouri State Highway

5   Patrol will be updated to include pardon information, but it will still be maintained as an

6   open record and will be available to the general public."

7       Plaintiff discussed the inferiority of Clemency compared to Expungement with

8   Defendants several times.  Despite this and instructing Defendants in writing to "fly below

9   their radar," Defendants essentially created a fake news story connecting Plaintiff to then-

10  Missouri Governor Greitens and held de facto press conferences in some type of media

11  blitz on or around June 2018 that resulted in more nationwide, permanently bad internet

12  articles about Plaintiff more than ever before.  These actions were done before securing an

13  Expungement.

14      What is particularly malicious is that Defendants were discussing charges that had

15  been dismissed, closed and confidential by various Missouri laws, with media sources that

16  had no relevance to their fake news about Clemency or an Expungement.  They even made

17  statements of "fact" they have no clue about that make Plaintiff look guilty of those

18  dismissed and other charges.  Plaintiff is still fighting court battles, having already spent

19  tens of thousands of dollars to clear his name that defendants tarnished over the internet.

20  This was a foreseeable result of defendants' misconduct that tolls statutes of limitations.

21      Even with an expunged record that is clean with no convictions, the damage done

22  on the internet by the defendants takes no prisoners and will be lifelong.  Plaintiff could

never effectively represent someone as an attorney with such prejudicial articles and statements all over the internet that were created by the defendants. Defendants did the opposite of what they were hired to do, and betrayed their own client after being paid $5,000 for a two-page form Petition that Plaintiff completed.

As a direct result of Defendants' backstabbing their own client, internet search engines now state the exact opposite of the public record even before the expungement because the internet search engines state that Plaintiff was convicted of dismissed charges or charges that were never brought against Plaintiff. For example, a Google search result stated: "[Plaintiff name] was convicted of invasion of privacy in St. Louis ... child pornography, possession of child pornography and child abuse." Grammatically this is a complete sentence that is the exact opposite of the truth. Yet, there is little one can do to change these false and defamatory internet search results caused by Defendants' willful and wanton disregard for their client because Section 230 of the Communications Decency Act immunizes internet search engines like Google and Yahoo from civil liability.

Google's one-sentence summary twists and contradicts the original publications that state those charges were dismissed. Therefore, Google's internet summary falsely stated Plaintiff was convicted of crimes and sex offenses, which is the opposite of the truth those charges were dismissed. Plaintiff was never charged with Child Abuse, let alone convicted.

Defendants' preemptive argument that the matters they discussed were in the public record is a farce because they are not in the public record after an expungement and many of the statements made to the press were not in the public record, and they had no

1    way of knowing some of the matters they discussed because even Plaintiff does not know

2    about some of the incriminating statements defendants made to the press about their

3    client.

4              Likewise, Yahoo's internet search engine result falsely stated: "[Plaintiff's name]

5    was convicted of invasion of privacy in St. Louis for secretly filming sex partners …

6    possession of child pornography and child."  Defendants caused these permanent, lifelong

7    defamatory stains over the internet just months before Plaintiff's Expungement.  The

8    dismissed charges had nothing to do with the fake news story they created.  Mentioning

9    decades old dismissed charges that were closed and confidential was sadistic malice, to

10   their own client who paid them well.

11             Defendants' actions were malicious, oppressive, and fraudulent because they never

12   advised Plaintiff of their intent to issue press releases and create a media blitz referring to

13   Plaintiff as a "stripper" even though Plaintiff had not worked in said capacity for over two

14   decades.  Defendants knew Plaintiff changed one letter in his surname in 2005 to protect

15   his privacy on the internet; yet, Defendants openly revealed Plaintiff's name change in

16   their 2018 media blitz, thereby destroying the privacy Plaintiff enjoyed for thirteen years

17   and defeating the whole purpose of Plaintiff's one letter name change.

18             In the original newspaper article orchestrated by Defendants and published by the

19   St. Louis Post-Dispatch was created without Plaintiff's knowledge or permission.  Plaintiff

20   learned about this media blitz on or around June 2018. Defendants fabricated a fake news

21   story about a hypothetical Clemency that did not and could not have occurred.  Worse,

22   Defendants regurgitated dismissed charges from over two decades before that were

completely irrelevant to Clemency. Now, as a result of Defendants' actions, an internet search of Plaintiff's name reveals dozens of articles republished on the Associated Press from the St. Louis Post-Dispatch, Houston Chronicle, Washington Post, U.S. News & World Report, American Bar Association Journal, CBS News, Chicago Tribune, several local and regional newspapers, and more. Defendants permanently stained their own client's life forever after they were retained for an Expungement to help clean up their client's record and ignored their client's instruction to "fly below their radar" just to gain media publicity.

When Plaintiff confronted Defendants about the fake news they created that has permanently damaged Plaintiff, Defendants tried to argue that everything was in the public record. Defendants knew there would be blowback and had premeditated this bogus defense. The irony and hypocrisy of this fallacious defense is that had they done their job of getting an Expungement, this would not have been a true statement because none of the information is accessible in the public record after Expungement. Worse, Plaintiff provided Defendants with the public record, so they did not even need to dig it up at the courthouse. Then these attorneys e-mail the public record Plaintiff gave them to the news media that probably would not have spent the resources to verify it by digging it up at the courthouse. This is the ultimate breach of attorney-client loyalty and confidentiality. For the attorney to argue in his defense that it was in the public record is pure premeditated malice. Even with the public record in hand that Plaintiff gave his attorneys, they still got it wrong and told the press Plaintiff was charged with Child Abuse, which was never true.

1    Defendants showed no regard for duties of loyalty and confidentiality to their client

2    because they smeared Plaintiff's name without his permission or knowledge all over the

3    internet months before Plaintiff was to receive an Expungement that would create a clean

4    criminal record.  Defendants did all these malicious and oppressive acts to their own client

5    who paid them five thousand dollars for a two-page court-approved form petition that

6    Plaintiff completed just to enhance their vanity and narcissism by getting their names in

7    newspapers.  There is nothing more outrageous that an attorney could do to a client;

8    exemplary damages are essential to punish this unprovoked backstabbing of their own

9    client.

10   After Plaintiff learned of the unauthorized media blitz around July 2018 and fired

11   Defendants.  Plaintiff retained new legal counsel who secured Plaintiff's Expungement on

12   November 6, 2018.  Around the same time, Defendant Albert Watkins ("Judas") was

13   prosecuted for criminal contempt of court for the same type of conduct at issue in the case

14   at bar.  Specifically, Judas violated a court "gag" order in a civil case where he represented

15   the ex-husband of Governor Greitens' mistress because he held a press conference on the

16   court steps after the gag order.  The trial court judge stated in his order: "Your acts and

17   conduct in issuing the press release and conducting the press conference thwart and

18   defeat the authority of the Circuit Court of the City of St. Louis."  Defendant Watkins is a

19   repeat offender for the same misconduct.

20   Now even though Plaintiff has a clean criminal record, the betrayal by his own

21   lawyers leaves permanent damage on the internet that takes no prisoners.  Judas is

22   experienced in "news" media and knew this would occur.  Defendants' actions were beyond

outrageous, and it was foreseeable that such a permanent stain would occur after fabricating such a media blitz.

As a result of Defendants' misconduct, Plaintiff has suffered numerous economic and non-economic damages, and paid tens of thousands in ongoing legal costs to fix false and defamatory internet search results and statements resulting from their actions.

### III.    CAUSES OF ACTION

**1) LEGAL MALPRACTICE**

Plaintiff realleges and incorporates all prior paragraphs herein against all defendants.

Plaintiff alleges that: (1) an attorney-client relationship between Plaintiff and Defendants existed; (2) Defendants were negligent and/or breached their contract; (3) Defendants' actions proximately caused plaintiff's damages; and (4) Plaintiff has suffered and continues to suffer irreparable lifelong damages in the form of lost earnings, loss of personal and professional reputation, emotional distress, and pain and suffering because of Defendants' intentional misconduct. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 626 (Mo. banc 1995).

Plaintiff will have to change his name to attempt to regain any chance of living a semi-normal life, and even then Plaintiff will have to report his name change on employment applications, which defeats the purpose of Missouri Revised Statute 610.140.8 that states:  "No person as to whom such order has been entered shall be held thereafter under any provision of law to be guilty of perjury or otherwise giving a false

statement by reason of his or her failure to recite or acknowledge such arrests, pleas, trials, convictions, or expungement in response to an inquiry made of him or her and no such inquiry shall be made for information relating to an expungement." Plaintiff will have to provide information relating to his expungement because no employer would believe him if he answered "No" to any questions about criminal convictions because of Defendants' media blitz against their own client just a few months before Plaintiff's full expungement. Defendants' media blitz was fake news because there was no Clemency application and could not have been any Clemency application. Defendants' media blitz defeated the whole purpose of an Expungement and directly violated Plaintiff's instruction to "fly below the radar."

Had Defendants simply taken Plaintiff's five thousand dollars and properly filed and served the two-page Form Expungement Petition instead of creating a national media circus, the conflict and case at bar would never have occurred. While Defendants did things they were not retained to do, Defendants failed to properly serve the Expungement Petition on any party. Specifically, after Plaintiff fired Defendants, on July 9, 2018 the Court Clerk stated: "the court has no record of service returns on any party."

## 2) <u>BREACH OF FIDUCIARY DUTY / CONSTRUCTIVE FRAUD</u>

Plaintiff realleges and incorporates all prior paragraphs herein against all defendants.

"Whether characterized as breach of fiduciary duty or constructive fraud, the elements of such a claim [that Plaintiff pleads] are: (1) an attorney-client relationship; (2)

1  breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to

2  the client; (5) no other recognized tort encompasses the facts alleged." *Klemme v. Best*, 941

3  S.W.2d 493, 496 (Mo. 1997).  "The second and fifth elements distinguish this claim from a

4  legal malpractice action.  The rationale for the second element is clear: '[A] breach of the

5  standard of care is negligence, and a breach of a fiduciary obligation is constructive

6  fraud.'"  *Id*.  "When an attorney intentionally commits an act of misconduct in

7  representing his or her client's interest … an action may lie for breach of fiduciary duty or

8  constructive fraud." *Arana v. Koerner*, 735 S.W.2d 729, 735 (Mo. App. 1987).

9

10  **3) <u>NEGLIGENCE</u>**

11      Plaintiff realleges and incorporates all prior paragraphs herein against all

12  defendants.

13      Defendants failed "to exercise the degree of care which a reasonably prudent and

14  careful person would use under the same or similar circumstances." *Jackson v. City of*

15  *Blue Springs*, 904 S.W.2d 322, 329 (Mo. App. 1995).  Plaintiff alleges that Defendants had

16  (1) a legal duty to conform to a certain standard of conduct to protect Plaintiff against

17  unreasonable risks; (2) Defendants breached that duty; (3) there is a proximate cause

18  between Defendants' conduct and Plaintiff's resulting injury; and (4) Plaintiff sustained

19  actual damages.  *Flora v. Amega Mobile Home Sales*, 958 S.W.2d 322, 323 (Mo. App. 1998).

20  A reasonable person would foresee that by contacting media sources, issuing press

21  releases, and involving the Associated Press that the ensuing internet articles would

22  create a permanent internet stain from conduct 23 years prior just a few months before a

1   full expungement would completely erase Plaintiff's criminal record consisting of one

2   conviction on one count.

3         The gist of Defendants' fabricated news involved the hypocrisy of Governor Greitens

4   making the same arguments to dismiss his Invasion of Privacy charge that Plaintiff made

5   over two decades before.  Yet, Defendants' fraudulent intent to reference dismissed

6   charges from 23 years prior that were irrelevant to Clemency or Invasion of Privacy was

7   malicious.  Defendants even included a Child Abuse charge in their media blitz even

8   though their client was never charged with Child Abuse, let alone convicted.  These

9   actions reflect Defendants' malicious, oppressive, and fraudulent intent towards their own

10  client seeking Expungement.  Defendants fabricated a fake news story about the Governor

11  regarding a Clemency that did not and could not happen.  Defendants' actions were

12  sinister hypocrisy that permanently stained the record of a client they were hired to

13  Expunge and remain loyal and confidential.

14

15  **4)  <u>FRAUD</u>**

16        Plaintiff realleges and incorporates all prior paragraphs herein against all

17  defendants.

18        Plaintiff hired Defendants for an Expungement, not a media blitz about a moot,

19  fabricated hypothetical Clemency that did not and could not happen, and that would

20  largely defeat the purpose of expungement because their actions would permanently scar

21  their own client for life.  Defendants intentionally misrepresented that the scope of their

22  work was limited to expungement and concealed their true intent to drag Plaintiff's name

1   through the internet mud 23 years later by fabricating a fake story about a Clemency that

2   did not and could not happen in order to get their names in a newspaper.  Defendants

3   fraudulently concealed the true intent of their request to privately discuss Clemency with

4   the Governor's lawyers, whom they had another case with representing the ex-husband of

5   Governor Greitens' mistress, into media press releases that with any degree of

6   foreseeability would lead to the consequences at bar.  Plaintiff reasonably relied upon

7   Defendants' misrepresentations and suffered actual and permanent damages as set forth

8   in this Complaint and proven at trial.  *Kratky v. Musil*, 969 S.W.2d 371, 376 (Mo. App.

9   1998).

10

11  **5) <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

12      Plaintiff realleges and incorporates all prior paragraphs herein against all

13  defendants.  Defendants' actions were extreme and outrageous, and intentionally designed

14  to and in fact did and still do inflict severe emotional distress.

15

16              **IV.    <u>PRAYER FOR RELIEF</u>**

17      Plaintiff has suffered and continues to suffer actual damages.  Plaintiff prays for

18  not less than $1,000,000 for economic and non-economic damages and punitive monetary

19  damages according to proof at a trial BY JURY.

20

21  March 1, 2023                              /S/ Paul Henreid – Plaintiff Pro Se
                                               1610 Nw 33rd St
22                                             Lawton, Oklahoma 73505
                                               Phone:  (661) 874-5233
                                               E-mail: phenre@gmail.com

---

1

2            V.    **SIGNATURE ATTESTATION**

3

4          I hereby attest that I have on file all holographic signatures corresponding to any

5    signatures indicated by a conformed signature (/S/) within this e-filed document.

6          I declare under penalty of perjury that the foregoing is true and correct.

7

8    March 1, 2023

9

10

11   /S/ Paul Henreid
12   1610 Nw 33rd St
     Lawton, Oklahoma 73505
13   Phone:  (661) 874-5233
     E-mail: phenre@gmail.com
14   Plaintiff – In Propria Persona

15

16

17

18

19

20

21

22

CIVIL COMPLAINT - 14

1

2

## VI.  **CERTIFICATION**

3       Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

4   my knowledge, information, and belief that this complaint: (1) is not being presented for

5   an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase

6   the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

7   extending, modifying, or reversing existing law; (3) the factual contentions have

8   evidentiary support or, if specifically so identified, will likely have evidentiary support

9   after a reasonable opportunity for further investigation or discovery; and (4) the complaint

10  otherwise complies with the requirements of Rule 11.  I agree to provide the Clerk's Office

11  with any changes to my address where case-related papers may be served. I understand

12  that my failure to keep a current address on file with the Clerk's Office may result in the

13  dismissal of my case.

14

15  I declare under penalty of perjury that the foregoing is true and correct on March 1, 2023.

16

17  *Paul Henreid*

18
    /S/ Paul Henreid
19  1610 Nw 33rd St
    Lawton, Oklahoma 73505
20  Phone:  (661) 874-5233
    E-mail: phenre@gmail.com
21  Plaintiff – In Propria Persona

22

---

CIVIL COMPLAINT - 15

1

## VII.     **PARTY INFORMATION**

2

PARTIES TO THIS CIVIL COMPLAINT:

3    Plaintiff - Paul Henreid
     1610 Nw 33rd St
4    Lawton, Oklahoma 73505
     Telephone number:  (661) 874-5233
5    E-mail address: phenre@gmail.com

6

     Defendant #1
7    Kodner Watkins LC – Law Firm
     1200 South Big Bend Blvd.
8    Saint Louis, Missouri 63117
     Telephone number:  (314) 727-9111
9    E-mail address:  info@kwstllaw.com

10   Defendant #2
     Albert Watkins, Esq. – Attorney
11   1200 South Big Bend Blvd.
     Saint Louis, Missouri 63117
12   Telephone number:  (314) 727-9111
     E-mail address:  al@kwstllaw.com

13

     Defendant #3
14   Michael Schwade, Esq. – Attorney
     1200 South Big Bend Blvd.
15   Saint Louis, Missouri 63117
     Telephone number:  (314) 727-9111
16   E-mail address:  mschwade@kwstllaw.com

17

18

19

20

21

22