# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PAUL HENREID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23CV249 HEA |
| ) | |
| KODNER WATKINS LC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. [Doc. No. 53]. Plaintiff has filed a response to the Motion, and Defendants have filed a reply. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

### Facts and Background

Plaintiff Paul Henreid, who is an attorney proceeding pro se, brought this action against his former attorneys, Albert Watkins and Michael Schwade; their law firm, Kodner Watkins LC; and ten fictitious defendants (collectively, "Defendants"). This case arises out of Defendants' alleged misconduct during their representation of Plaintiff in 2018. Plaintiff asserts the following claims: breach of fiduciary duty/constructive fraud (Count I), negligence (Count II), fraud (Count

III), and intentional infliction of emotional distress (Count IV). He seeks damages and injunctive relief.

Plaintiff's Third Amended Complaint alleges the following facts: In January 2018, Plaintiff retained Defendants to secure an expungement of a 23-year-old conviction for invasion of privacy pursuant to Mo. Rev. Stat. § 610.140. Plaintiff instructed Defendants to be discreet and avoid drawing public attention to his petition for expungement. In March 2018, Defendant Schwade called Plaintiff and requested permission to communicate with then-Governor Eric Greitens's attorneys about seeking a pardon. Defendant Schwade informed Plaintiff that their law firm was representing one of the parties in a lawsuit involving Governor Greitens and, therefore, regularly communicated with his attorneys. Plaintiff believed that Defendant Schwade was asking for permission to informally communicate with Governor Greitens's attorneys in person, on the phone, or by email. Defendants knew Plaintiff did not want them to formally request a pardon or involve the media because those actions would defeat the purpose of seeking an expungement.

During the phone call, Plaintiff and Defendant Schwade discussed the differences between clemency and expungement, and Plaintiff told Defendant Schwade that clemency was an inferior remedy in comparison to expungement because he was time-barred from seeking clemency and would have to exhaust his

other remedies—including expungement—prior to seeking clemency. Plaintiff also noted that expungement would provide superior relief because it would remove his conviction, whereas clemency would not. Further, if Plaintiff successfully secured an expungement, there would be no conviction for Governor Greitens to pardon. Plaintiff was also hesitant to seek a pardon from Governor Greitens because Greitens had recently been charged with invasion of privacy and was raising the same arguments in a motion to dismiss the charge that Plaintiff raised decades ago. Plaintiff instructed Defendant Schwade to not take any actions that would adversely affect him or his petition for expungement.

Defendant Schwade concealed Defendants' true intent to gain publicity for themselves by creating a fake news story connecting Plaintiff to Governor Greitens by highlighting the similarities in their arguments against their respective charges. Against Plaintiff's explicit instruction to avoid drawing public attention to his petition for expungement, Defendants reached out to various media outlets, held press conferences about Plaintiff seeking a pardon, and intentionally misrepresented some facts related to his past conviction. Specifically, Defendant Watkins falsely told reporters that Plaintiff had also been charged with child abuse and child pornography. Defendants also disclosed privileged and confidential information from documents that Plaintiff had given them. During their publicity campaign, Defendants revealed that Plaintiff had changed one letter in his surname

3

in 2005, which defeated the purpose of the name change and ruined Plaintiff's privacy. Defendants created this news story knowing that it was false and that it violated their fiduciary duties of loyalty and confidentiality.

When Plaintiff discovered Defendants' misconduct in June 2018, he fired them and retained new counsel to help him secure an expungement. In July 2018, Plaintiff learned that Defendants never served the petition for expungement on any party as they were hired to do. In November 2018, Plaintiff's petition for expungement was granted.

As a result of Defendants' publicity campaign, dozens of news outlets published articles online that make Plaintiff appear to be guilty of child abuse and child pornography, even though those charges were dismissed. Searching for Plaintiff's name online now returns articles that falsely state he was convicted of those sex offenses against minors and refer to Plaintiff as a "stripper," even though he has not danced professionally for over two decades and has been working as an attorney in California. Plaintiff's reputation, personal life, and professional career have been ruined. Plaintiff has spent tens of thousands of dollars fighting to remedy the problems caused by Defendants' actions.

In March 2023, Defendant Watkins made false statements about Plaintiff to the press and gave news outlets potentially inflammatory selections from attorney-client privileged communications to adversely affect him and prejudice

4

prospective jurors. Defendant Watkins knew that his false statements and disclosure of privileged communications to the press did not establish a claim or defense or respond to allegations in this case. Using his status as prior counsel, Defendant Watkins made those false statements and disclosures in retaliation against Plaintiff for filing this lawsuit.

Defendants move to dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), and 12(b)(6). [Doc. No. 53]. They contend that the Third Amended Complaint contains conclusory, repetitive, and irrelevant allegations in violation of Fed. R. Civ. P. 8 and that Plaintiff has failed to allege fraud with sufficient particularity in violation of Fed. R. Civ. P. 9. [Doc. No. 54]. Defendants assert that Plaintiff's claims of breach of fiduciary duty and negligence are subsumed by his allegations of legal malpractice. *Id.* Plaintiff opposes the motion to dismiss. [Doc. No. 55].

## Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to dismiss, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*,

5

752 F.3d 725, 727 (8th Cir. 2014). However, courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## Discussion

**Count I – Breach of Fiduciary Duty**

The Missouri Supreme Court has made clear that "an attorney has the basic fiduciary obligations of undivided loyalty and confidentiality." *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997) (citing Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE, § 14.1 at 227 (4th ed. 1996)). An attorney breaches the duty of loyalty when he "plac[es] the interests of other[s] . . . before [those of the client]." *Klemme*, 941 S.W.2d at 496. He breaches the duty of confidentiality when he fails "to maintain the attorney-client privilege." *Neal v. State*, 379 S.W.3d 209, 220 (Mo. Ct. App. W.D. 2012). "The nature of a lawyer's profession necessitates the utmost good faith toward his client and the highest loyalty and devotion to his client's interests." *Gardine v. Cottey*, 230 S.W.2d 731, 739 (Mo. banc 1950) (quoting *In re Thomasson's Estate*, 144 S.W.2d 79, 83 (Mo. 1940)). The attorney-client relationship is "highly fiduciary and of a very delicate, exacting and confidential nature, requiring a very high degree of fidelity and good faith." *Id.* (quoting *Laughlin v. Boatmen's Nat'l Bank of St. Louis*, 163 S.W.2d 761, 765 (Mo. 1942)).

The elements of a claim for breach of fiduciary duty are: "(1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; (5) no other recognized tort encompasses the facts alleged." *Klemme*, 941 S.W.2d at 496. The elements of legal malpractice are: "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." *Id.* at 495 (citing *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 626 (Mo. banc 1995)).

The second and fifth elements distinguish a claim for breach of fiduciary duty from a claim for legal malpractice. *Klemme*, 941 S.W.2d at 496. "The rationale for the second element is clear: '[A] breach of the standard of care is negligence, and a breach of a fiduciary obligation is constructive fraud.'" *Id.* (alteration in original) (quoting LEGAL MALPRACTICE, § 8.10 at 600 (4th ed. 1996)). "The fifth element flows from *Donahue*." *Id.* In *Donahue*, the Missouri Supreme Court determined that the plaintiff's breach-of-fiduciary-duty claim was "no more than an action for attorney malpractice" because the alleged breach was "dependent on the existence of attorney negligence, not on the breach of a trust." *Donahue*, 900 S.W.2d at 629-630; *see also Klemme*, 941 S.W.2d at 496 ("If the alleged breach can be characterized as both a breach of the standard of care (legal malpractice based on negligence) and a breach of a fiduciary obligation

7

(constructive fraud), then the sole claim is legal malpractice." citing *Donahue*, 900 S.W.2d at 629-30)). "Clients may sue their attorneys for torts other than legal malpractice," and "an attorney may breach a fiduciary duty to a client at any time during their relationship." *Klemme*, 941 S.W.2d at 496 (overruling *Williams v. Preman*, 911 S.W.2d 288, 301 (Mo. Ct. App. W.D. 1995), to the extent it held that an attorney could not breach a fiduciary duty to his client during their relationship and could be liable only for malpractice).

Mallen and Smith's treatise on legal malpractice, which the Missouri Supreme Court relied on in *Klemme*, explained the distinction between breach of a fiduciary duty and professional negligence as follows:

> [A]n attorney's duties to a client include two obligations: (1) competent representation and (2) compliance with the fiduciary obligations. The fiduciary obligations set a standard of "conduct," analogous to the standard of "care," which pertains to the requisite skill, knowledge and diligence. Thus, the standard of care concerns negligence and the standard of conduct concerns a breach of loyalty or confidentiality. This approach uses the model for negligence, substituting the particular fiduciary obligations for the duty of care. Thereby, rules of causation, damages and the burden of proof remain the same.

2 LEGAL MALPRACTICE, § 15:3 at 660-61 (2024 ed.) (footnotes omitted).

Defendants argue that Plaintiff's claim for breach of fiduciary duty is subsumed by his allegations of legal malpractice because he alleges that they "breached the standard of care for which they were hired." The Court disagrees. Count I is not "dependent on the existence of attorney negligence" and contains no

8

allegations regarding a standard of care. *See Donahue*, 900 S.W.2d at 629; *Klemme*, 941 S.W.2d at 496 ("[A] breach of the standard of care is negligence, and a breach of a fiduciary obligation is constructive fraud.") (alteration in original). Plaintiff is not alleging that Defendants failed to act with the requisite degree of skill, knowledge, or diligence in providing legal services. He is alleging that Defendants deliberately disregarded his express instruction to avoid drawing public attention to his petition for expungement by reaching out to various media outlets, holding press conferences during which they falsely stated that Plaintiff was seeking a pardon, disclosing confidential and privileged information to the press, making false statements to the media that were directly adverse to Plaintiff's interests in seeking an expungement, and disclosing additional privileged information to the press in retaliation for filing this lawsuit. *See Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 474 F. Supp. 3d 1004, 1008 (W.D. Mo. July 23, 2020) ("Because the claims [for breach of contract and unjust enrichment] do not necessarily turn on professional negligence, they are not subject to dismissal at this stage on the ground that they are claims for legal malpractice under another guise."); 2 LEGAL MALPRACTICE, § 15:3 at 659-60 (2024 ed.) ("The lawyer may have acted negligently, but with undivided loyalty and preserved the client's confidences. Conversely, a breach of the obligation of confidentiality can be a

9

wrong independent of the standard of care or may accompany a failure to maintain undivided loyalty.") (footnotes omitted).

Like the plaintiff in *Klemme*, Plaintiff "has alleged facts that constitute the tort of breach of fiduciary duty against [Defendants]." *See Klemme*, 941 S.W.2d at 496. Specifically, he has alleged that "[Defendants] and [Plaintiff] had an attorney-client relationship; [Defendants] breached [their] fiduciary obligation[s] by placing the[ir] interests . . . before [Plaintiff]'s [and by failing to maintain attorney-client privilege]; th[ose] breach[es] proximately caused [Plaintiff] damages; no other recognized tort encompasses Plaintiff's claim." *See id.*; *Neal*, 379 S.W.3d at 220. Thus, the Court finds that Plaintiff has adequately stated a claim for breach of fiduciary duty.

**Count II – Negligence**

"Negligence is the failure to exercise the degree of care which a reasonably prudent and careful person would use under the same or similar circumstances." *Jackson v. City of Blue Springs*, 904 S.W.2d 322, 329 (Mo. Ct. App. W.D. 1995) "The elements of a negligence claim under Missouri law are proof of '(1) existence of a duty on the part of the defendant to protect plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure.'" *Id.* (quoting *Nappier v. Kincade*, 666 S.W.2d 858, 860 (Mo. Ct. App. E.D. 1984)). "Under Missouri law, when liability depends on an attorney's

10

'negligent performance of professional services' to a client, the claim must be treated as one for attorney malpractice (i.e. professional negligence)." *Rosemann v. Sigillito*, 785 F.3d 1175, 1181 (8th Cir. 2015) (citing *Beare v. Yarbrough*, 941 S.W.2d 552, 557 (Mo. Ct. App. E.D. 1997)).

Defendants argue that Count II is also subsumed by Plaintiff's allegations of legal malpractice because he alleges that they breached the standard of care. Thus, Defendants assert that Counts I and II should be construed as a single claim for legal malpractice.

In Count II, Plaintiff appears to be asserting a legal malpractice claim based on Defendants' negligent performance of professional services or breach of contract because Defendants' alleged duty to Plaintiff arose from their attorney-client relationship with Plaintiff. *See Klemme*, 941 S.W.2d at 495 (elements of legal malpractice based on attorney's negligence or breach of contract); *Alberts v. Turnbull Conway, P.C.*, 641 S.W.3d 370, 373 (Mo. Ct. App. W.D. 2022) ("The existence of an attorney-client relationship between the plaintiff and the attorney is an essential element [of legal malpractice based on negligence] because the duty to exercise reasonable care in the attorney's practice of the profession arises from that relationship."); *see also Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 334-35 (Mo. banc 2015) ("The nature of an alleged cause of action is based on the substance of the pleading, not the title." (citing *Gunter v.*

11

*City of St. James*, 189 S.W.3d 667, 677-678 (Mo. Ct. App. S.D. 2006))). Contrary to Defendants' assertion, however, Counts I and II are distinct from one another because they are based on different theories. Count I alleges that Defendants breached their fiduciary duties of loyalty and confidentiality, whereas Count II alleges that Defendants breached the standard of care. *See Klemme*, 941 S.W.2d at 496 ("[A] breach of the standard of care is negligence, and a breach of a fiduciary obligation is constructive fraud.'" (alteration in original) (quoting LEGAL MALPRACTICE, § 8.10 at 600 (4th ed. 1996))). In any event, "[a]t this stage of the litigation, [Plaintiff] need not decide whether the as-yet-undeveloped facts will support a claim for breach of fiduciary duty or a claim for ordinary negligence. Plaintiff is entitled to plead both claims, so long as each is plausibly alleged." *See Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 474 F. Supp. 3d 1004, 1008 & n.3 (W.D. Mo. July 23, 2020) ("Because the claims do not necessarily turn on professional negligence, they are not subject to dismissal at this stage on the ground that they are claims for legal malpractice under another guise."). Accordingly, Count II adequately states a claim.

**Count III - Fraud**

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

12

Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s requirements, "the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." *Id.* (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001)).

"An affirmative representation is not necessarily required for actionable fraud to exist." *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 59 (Mo. Ct. App. W.D. 2001) (citing *Murray v. Crank*, 945 S.W.2d 28, 31 (Mo. Ct. App. E.D. 1997)). "Silence or concealment of facts can amount to misrepresentation and serve as a substitute element for a false and fraudulent misrepresentation if the silent party has a duty to speak." *Borgschulte v. Bonnot*, 285 S.W.3d 345, 349 (Mo. Ct. App. S.D. 2009) (quoting *Keefhaver*, 58 S.W.3d at 59). "To recover under a concealment theory, Plaintiffs must show that Defendants had a duty to disclose information to Plaintiffs." *Littlefield v. Edmonds*, 172 S.W.3d 903, 907 (Mo. Ct. App. S.D. 2005). "This duty can be shown by the existence of unequal positions, as in a relationship of trust from confidential relationship or some demonstrably

13

superior knowledge on the part of one party that is not within the fair and reasonable reach of the other." *Id.* (citing *Van Booven v. Smull*, 938 S.W.2d 324, 328 (Mo. Ct. App. W.D. 1997)). "A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." *Id.* (citing *Keefhaver*, 58 S.W.3d at 60).

Defendants contend that Plaintiff did not allege fraud with sufficient particularity to satisfy Rule 9(b)'s requirements. The Court disagrees. The Third Amended Complaint sufficiently alleges the relevant time period as beginning during the March 2018 phone call with Defendant Schwade and ending when Plaintiff learned about Defendants' unauthorized public statements and fired them around June 2018. Defendants had a duty of disclosure due to the attorney-client relationship, and Plaintiff adequately alleged that Defendant Schwade did not inform him of Defendants' intent to gain publicity for themselves by speaking to the press during their March 2018 phone call, Defendant Watkins proceeded to engage in an unauthorized publicity campaign, and Plaintiff did not learn of their fraud until June 2018. Finally, Plaintiff stated his personal life and professional career have been ruined as a result of Defendants' fraudulent conduct and that he has spent tens of thousands of dollars attempting to remedy problems caused by

14

Defendants' misconduct. Thus, Plaintiff has adequately alleged what he has "given up" as a result of the Defendants' alleged misconduct. *See Drobnak*, 561 F.3d at 783; *see also Robert v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997) (concluding that the plaintiff's allegations were sufficient under Rule 9(b)'s pleading standards).

**Count IV – Intentional Infliction of Emotional Distress**

"In Missouri, to state a claim of intentional infliction of emotional distress, a plaintiff must plead: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. E.D. 2010) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). "The conduct must have been so outrageous in character and so extreme in degree that it is beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* (citing *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. W.D. 2000)). "Furthermore, the conduct must have been intended only to cause extreme emotional distress to the victim." *Id.* at 322 (citing *Thomas*, 31 S.W.3d at 446).

Here, the Third Amended Complaint does not allege that Defendants' unauthorized disclosure of confidential and privileged information to the press was intended only to cause him extreme emotional distress. *See Diehl, Inc.*, 309 S.W.3d

15

at 322. Indeed, Plaintiff specifically alleges that Defendants disclosed the information and held press conferences to gain publicity for themselves. Accordingly, Count IV must be dismissed for failure to state a claim. *See id.*

## Conclusion

Based upon the foregoing analysis, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is granted in part and denied in part. Count IV is dismissed for failure to state a claim. Counts I, II, and III may proceed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, [Doc. No. 53], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count IV is **DISMISSED**.

Dated this 23rd day of December, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE